KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARTHA LILIA TORRES,<br><br>Defendant. | Criminal Case No. 08CR1463-BTM<br><br>Date: August 8, 2008<br>Time: 1:30 p.m.<br>Place: Courtroom 15<br><br>The Honorable Barry T. Moskowitz<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**(A) COMPEL DISCOVERY AND PRESERVE EVIDENCE;**<br>**(B) SUPPRESS STATEMENTS;**<br>**(C) DISMISS THE INDICTMENT BECAUSE THE DRUG STATUTE IS UNCONSTITUTIONAL;**<br>**(D) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; AND**<br>**(E) FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On May 7, 2008, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant MARTHA LILIA TORRES ("Defendant"). The Indictment charges Defendant with one count of importing approximately 48.22 kilograms (106.30 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 48.22 kilograms (106.30 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On May 8, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty. On June 13, 2008, Defendant filed her discovery motions. On July 25, 2008, Defendant filed additional motions to dismiss the indictment and suppress statements. The United States files the following response in opposition to Defendant's above-referenced motions.

## II

## STATEMENT OF FACTS

### A. <u>OFFENSE CONDUCT</u>

#### 1. <u>Events Leading to Seizure of Marijuana</u>

On April 27, 2008, at approximately 9:35 a.m., Defendant drove a grey, 1997 Honda Accord, bearing Mexico license plate BA/MX AJA1025, into the vehicle primary lanes at the Calexico, California, East Port of Entry. The United States Customs and Border Protection Officer Cesar Araujo was working the primary inspection lane when Defendant approached in her car. Defendant presented her valid Border Crossing Card and gave Officer Araujo a negative customs declaration. Defendant told Officer Araujo that she was going to Calexico. Officer Araujo referred Defendant and her car to the secondary inspection area.

In the secondary inspection area, Officer Saul Baca received a negative customs declaration from Defendant and inquired as to who owned the car and where Defendant was going. Defendant stated that she owned the car and that it was registered in her name. Defendant further stated that she was on her way to Wal-Mart. During their conversation, Officer Baca noticed Defendant was avoiding eye contact.

Officer Baca requested that Canine Enforcement Officer David Alba screen the car with his narcotics detector dog, Cindy. Upon conducting a sweep of the car, Officer Alba's dog alerted to the

right side rocker panels and quarter panels of Defendant's car. Officer Bacar conducted a more thorough examination of the car and discovered several packages wrapped in clear cellophane plastic concealed in a non-factory compartment in the gas tank, in the quarter panels, and in the rocker panels of the car. Officer Baca performed a field test on one of the packages and it tested positive for marijuana. A total of twenty-six packages were removed from the car with a total weight of 60.94 kilograms (134.07 pounds). Defendant was arrested.

**2. Post-Miranda Statements**

On April 27, 2008, at approximately 2:29 p.m., United States Immigration and Customs Enforcement (ICE) Agent Rosalinda Estrada, as witnessed by ICE Agent Stewart Harvey, advised Defendant was of her Miranda rights in the Spanish language. Defendant acknowledged that she understood her Miranda rights, and she agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant claimed that she did not know the marijuana was concealed inside her car. She said she was going to Santo Tomas. Defendant said she was separated from her husband, and she was currently in a relationship with Gustavo Mesa Vargas, whom she has lent her car to in the past. Defendant said she has known Mr. Vargas for three years and has been dating him for two years. Defendant claimed that Mr. Vargas uses drugs. Defendant also stated that Mr. Vargas has friends that use and sell drugs.

Defendant said she owned the 1997 Honda Accord, and that she had purchased it six months ago in Mexicali from a used car dealership. Defendant stated that she has crossed into the United States on three prior occasions using her car. Defendant said that only she and her friend, Mr. Vargas, have driven the car since she bought it. Defendant said that Mr. Vargas last used her car on April 26, 2008 to drive home. Defendant said she picked up her car from Mr. Vargas' house because she wanted to drive to Santo Tomas. Mr. Vargas asked Defendant if he could borrow her car when she arrived at Santo Tomas. When asked how Mr. Vargas was going to get to Santo Tomas, Defendant said that Mr. Vargas was going to cross into the United States through the pedestrian lanes. Defendant could not explain why Mr. Vargas did not ride with her to Santo Tomas.

/ /

III

## THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES

### A. MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

As of the date of this Motion, the United States has produced 66 pages of discovery (including reports of the arresting officers and agents, a criminal history report, photographs of the car and marijuana seized) and 1 DVD-ROM containing Defendant's videotaped, post-arrest. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

#### 1. Defendant's Statements

The United States will comply with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The United States has produced all of Defendant's statements that are known to the undersigned as of the date of this response. If the United States discovers additional oral or written statements that require disclosure under Fed. R. Crim. P. 16(a)(1)(A) or (B), such statements will be provided to Defendant.

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**2. Arrest Reports, Notes and Dispatch Tapes**

As discussed above, the United States will comply with comply with Fed. R. Crim. P. 16(a)(1)(A) and (B). The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.18 (discussing Jencks Act); see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**3. *Brady* Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or

innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Brady does not, however, require that the United States open its file for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 128-29 (9th Cir. 1995)); (3) evidence that the defendant already possess (see United States v. Mikaelian, 168 F.3d 380, 389-90) (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the United States Attorney could not reasonably be imputed to have knowledge or control over (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).

**4. Any Information That May Result in a Lower Sentence**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect her guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to her sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

/ /

**5. Defendant's Prior Record**

The United States has already provided Defendant with a copy of her criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

**6. Any Proposed 404(b) or 609 Evidence**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of her criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

Should the United States seek to introduce any similar act evidence, pursuant to Federal Rules of Evidence 404(b) and 609, it will provide Defendant with notice of its proposed use of such evidence and information about such bad acts at the time the United States files its Trial Memorandum. The United States objects to Defendant's request to provide such notice three weeks before trial.

The United States also objects to providing Defendant with complete vehicle and pedestrian crossing reports from the Treasury Enforcement Communications System ("TECS"). TECS reports are not subject to Fed. R. Crim. P. 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the United States as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If the United States intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

**7. Evidence Seized**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E).

/ /

**8. Request for Preservation of Evidence**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States recognizes its obligation to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the United States, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the United States that results in actual prejudice to the Defendant. See Illinois v. Fisher, 504 U.S. 544 (2004); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**9. Henthorn Material**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes

the request for an order that the prosecutor personally review the personnel files.

**10. Tangible Objects**

As previously discussed in response 8 above, the United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant. However, the United States need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**11. Expert Witness**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

**12. Impeachment Evidence**

The United States incorporates by reference Response 3 above.

**13. Evidence of Criminal Investigation of Any Government Witness**

The United States incorporates by reference Response 3 above. The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and

does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

**14. Evidence of Bias or Motive to Lie**

The United States incorporates by reference Response 3 above.

**15. Evidence Affecting Perception, Recollection, Ability to Communicate**

The United States incorporates by reference Response 3 above.

**16. Witness Addresses**

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States has provided and will continue to provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir. 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)). Nevertheless, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992).

The United States also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a government witness. "There is no statutory

basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Yung, 97 F. Supp.2d 24, 36 (D.D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

**17. Names of Witnesses Favorable to Defendant**

The United States incorporates by reference Responses 3 and 16 above.

**18. Statements Relevant to the Defense**

The United States incorporates by reference Response 3 above. The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

**19. Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**20. Giglio Information**

The United States incorporates by reference Response 3 above. The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**21. Agreements Between Government and Witnesses**

The United States objects to this overbroad request. Defendant cites no authority – rule of procedure or case law – to support her request. As such, the United States will comply with its obligations as noted infra Response 22.

**22. Informants and Cooperating Witnesses**

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

**23. Bias by Informants or Cooperating Witnesses**

The United States incorporates by reference Responses 3 and 20 above.

**24. Personnel Records of Government Officers Involved in Arrest**

The United States incorporates by reference Response 9 above. The United States will instruct all relevant agencies to review the personnel files of government witnesses for information pertaining to dishonesty or impeachment. Defendant has not cited any authority that requires the United States to produce "citizen complaints and other related internal affairs documents." [Def Motion at 8.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534, 535. Pitchess is simply inapplicable to Defendant's case.

**25. Training of Relevant Law Enforcement Officers**

The United States strenuously objects to providing to Defendant a copy of all policies, training instructions, and manuals issued by all law enforcement agencies involved in this case. The requested policies, training instructions, and manuals are irrelevant and do not fall within the scope of Fed. R. Crim. P. 16, or any other statutory or Constitutional disclosure provision. Even if one or more of the inspectors, officers, or special agents violated his or her own administrative regulations, guidelines, or procedures, such violations would not result in the exclusion of evidence if Defendant's Constitutional and statutory rights were not violated in this case. United States v. Caceres, 440 U.S. 741, 744 (1979); United States v. Hinton, 222 F.3d 664 (9th Cir. 2000).

**26. Performance Goals and Policy Awards**

The United States strenuously objects to providing Defendant with information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of all law enforcement officers involved in this case. The requested information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of the law enforcement officers is irrelevant and does not fall within the scope of Fed. R. Crim. P. 16, exculpatory evidence under Brady, impeachment evidence under Giglio, or any other authority governing disclosure.

**27. Opportunity to Weigh, View, and Photograph Contraband**

The United States incorporates by reference Responses 7 and 10. The United States has, and will continue to comply with Fed. R. Crim. P. 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or is intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant.

**28. DEA-7 Form**

The United States will provide Defendant with the results of the Drug Enforcement Administration laboratory tests on the marijuana seized in this case pursuant to Fed. R. Crim. P. 16(F).

**29. TECS Reports**

The Untied States incorporates by reference Response 6 above.

**30. Reports of Scientific Tests or Examinations**

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**31. Narcotics Detector Dog Information**

The United States strongly objects to providing Defendant with Narcotic Detector Dog information. Defendant cites no legal ground for this request. The interior and exterior of Defendant's vehicle was sniffed in the secondary inspection area at the border, where no probable cause or even a reasonable articulable suspicion is needed to conduct a routine search. United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985); United States v. Vargas-Castillo, 329 F3d 715, 722 (9th Cir. 2003). Thus, none of the information Defendant requests is relevant or discoverable.

**32. <u>Residual Request</u>**

As already indicated, the United States will comply with its discovery obligations in a timely manner.

**B. <u>THE MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED</u>**

Defendant contends that the Court should suppress any statement made at the time of her arrest on the grounds that Defendant's <u>Miranda</u> waiver was not knowing, intelligent, and voluntary, and that the statements made by Defendant were not voluntary. As discussed below, these arguments lack merit.

**1. <u>Defendant Made A Knowing, Intelligent, and Voluntary Miranda Waiver</u>**

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of <u>Miranda</u> rights, and was not elicited by improper coercion. <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should not be found in the "absence of police overreaching").

A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid <u>Miranda</u> waiver. <u>Butler</u>, 441 U.S. at 373. In assessing the validity of a defendant's <u>Miranda</u> waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations. <u>See</u> <u>Moran</u>, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (<u>see</u> <u>Doe III</u>, 155 F.3d at 1074-75 (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents)); (2) the defendant's familiarity with the criminal justice system (<u>see</u> <u>United States v. Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters)); (3) the explicitness of the <u>Miranda</u> waiver (<u>see</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written <u>Miranda</u> waiver is "strong evidence that the waiver is valid"),

United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver)); and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession (see Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview)). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations. See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

Here, ICE agents scrupulously honored the letter and spirit of Miranda in carefully advising Defendant, in the Spanish Language, of her Miranda rights prior to any post-arrest custodial interrogation. Defendant was advised of her Miranda rights, both orally and in writing, before the interrogation. Defendant orally agreed to waive her Miranda rights and she signed a Miranda waiver form. Defendant also initialed next to each Miranda right on the advice of rights form. Based on the totality of the circumstances, Defendant's statements should not be suppressed because her Miranda waiver was knowing, intelligent, and voluntary.

**2. Defendant's Post-Arrest Statements Were Voluntary**

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." Doe III, 155 F.3d at 1074.

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, 124 S. Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)); see also United States v. Pinion, 800 F.2d 976, 980 (9th

Cir. 1986) (the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper conduct). The Constitution does not bar the use by interrogating officers of any statement that could be construed as a threat or promise, however slight, but only those which constitute outrageous behavior under the circumstances and which in fact induce a confession. See United States v. Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read her Miranda rights and was provided with a written advice of rights and Miranda waiver form prior to her post-arrest interview. Defendant explicitly stated that she understood her Miranda rights and agreed to waive those rights. See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any government agent. Defendant merely contends that her statements were involuntary because agents told her to tell the truth, agents told her that they believed she was lying, and agents made reference to her children. However, there must be a causal connection between the improper police conduct and the confession, see United States v. Kelley, 953 F.2d 562, 565 (9thh Cir. 1992), but it is not sufficient to show that the interrogation caused the confession, see Guerrero, 847 F.2d at 1365-66. There is no such causal connection. There is no evidence that Defendant's will was overborne at the time she made her post-arrest statements. Consequently, Defendant's motion to suppress her statements as involuntarily given should be denied.

### 3. The Motion Should Be Denied Without An Evidentiary Hearing

First, the Court can and should deny Defendant's Motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."). Here, Defendant has failed to support her allegations with a declaration, in clear violation of Criminal Local Rule 47.1(g).

Second, the Court can and should deny Defendant's motion to suppress statements without an evidentiary hearing because Defendant failed to allege a specific factual dispute. An evidentiary hearing is not required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). Where a defendant fails to provide a specific factual dispute of any material fact, the Court is not required to hold an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist"); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to boilerplate motions that

lay no factual foundation" and that the unsworn representations of counsel were "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession where there was "no real allegation of [] police coercion").

Defendant's motion failed to specifically identify the statements that she seeks to suppress or allege any specific factual or legal dispute regarding the inadmissibility of the statements. Defendant does not allege that the government agents failed to advise her of her Miranda rights, that the Miranda rights provided were somehow defective. Defendant merely asserts that her statements were the product or coercion by Government agents because agents told her to tell the truth, told her they did thought she was lying and mentioned her children. As discussed above, Defendant has failed to demonstrate the causal connection between the alleged improper conduct by the agents and the statements made by Defendant. The reason Defendant has not established a causal connection is because there was no improper conduct by the agents. In essence, Defendant's motion to suppress lacks sufficient definiteness, clarity, and specificity to enable the United States to prepare for any motion to suppress statements or the Court to make a reasoned finding of any impropriety. In the event that the Court orders an evidentiary hearing, the United States requests that such a hearing be held at the time the Court hears motions in limine so that the United States may obtain a full transcript of the videotaped recording by a certified Court interpreter so that the Court can view the videotaped recording and make an independent assessment with respect to the statements made by Defendant.

## C. THE CHARGING STATUTES ARE CONSTITUTIONAL

Defendant contends that 21 U.S.C. §§ 841, 952, and 960 are unconstitutional following the Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). This Court has already squarely and repeatedly rejected the claim that Apprendi rendered the federal drug laws, including 21 U.S.C. §§ 841, 952 and 960, facially unconstitutional. See, e.g., United States v. Jimenez, 300 F.3d 1166 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz, 286 F.3d 1104, 1109-10 (9th Cir. 2002); United States

v. Varela-Rivera, 279 F.3d 1174, 1175 n.1 (9th Cir. 2002). Sections 841, 952 and 960 do not expressly commit the determination of drug type and quantity to the judge. See Buckland, 289 F.3d at 565; Mendoza-Paz, 286 F.3d at 1110. See also Varela-Rivera, 279 F.3d at 1175 n.1 (recognizing that Buckland foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are unconstitutional). Although Defendant urges this Court to reject Buckland, the Ninth Circuit's en banc decision remains binding until overruled by another en banc decision by the Ninth Circuit**.**

The Ninth Circuit also has foreclosed Defendant's contention that the grand jury should have found that she knew the weight and type of drug she smuggled into the United States. Defendant's position is unsupported by the law. In United States v. Carranza, 289 F.3d 634, 643-44 (9th Cir. 2002), this Court reaffirmed longstanding precedent that the government need not prove that defendants knew the type or quantity of controlled substance they were smuggling in order to sustain a conviction under the federal drug statutes. See also United States v. Salazar, 5 F.3d 445, 446 (9th Cir. 1993); United States v. Ramirez-Ramirez, 875 F.2d 772, 774 (9th Cir. 1989). The government must prove only that defendants knew they were smuggling some type of controlled substance. Carranza, 289 F.3d at 644.

The Ninth Circuit revisited its holding in Carranza in United States v. Hernandez, 322 F.3d 592, 602 (9th Cir. 2003). In Hernandez, the Ninth Circuit rejected the *mens rea* argument made by the appellant, concluding:

> [Appellant] argues that the reasoning behind our decisions in Buckland and Mendoza-Paz require the government to prove that [Appellant] had the requisite mens rea with respect to both the type and quantity of drug he possessed and imported. This challenge is foreclosed by United States v. Carranza, 289 F.3d 634, 644 (9th Cir.2002) ("A defendant charged with importing or possessing a drug is not required to know the type and amount of the drug.").

Id. This Court should reject Defendant's attempt to read into the drug statutes a new mens rea element.

For all of the foregoing reasons, the Court should deny Defendant's motion to dismiss the indictment because the charging statutes are constitutional.

**D. THE GRAND JURY INSTRUCTIONS WERE PROPER**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [See Defendants' Discovery Motion, Docket #30, at 9-10 (addressing instructions on probable cause and exculpatory evidence, as

well as comments during *voir dire* of the grand jury panel).] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed. Defendant's contention is contrary to Ninth Circuit precedent, and contrary to findings recently made by District Judge Barry T. Moskowitz on these same issues. [See Order Denying Defendant's Motion to Dismiss Indictment in United States v. Martinez-Covarrubias, 07CR0491 (S.D. Cal. Oct. 11, 2007).] For these reasons, Defendant's motion to dismiss the Indictment should be denied.[1]

**E. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

## IV

## CONCLUSION

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence, Suppress Statements, Dismiss the Indictment Due to Unconstitutional Drug Statutes, Dismiss the Indictment Due to Improper Grand Jury Instructions, and Leave to File Further Motions, unless unopposed.

DATED: August 5, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Joseph J.M. Orabona
JOSEPH J.M. ORABONA
Assistant United States Attorney

[1] The United States respectfully requests that the Court grant leave to file supplemental briefing should the Court wish to reconsider this issue.